## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. PX-23-030** |
| | * | |
| **JOY SAIF CHOUDHURY,** | * | |
| | * | |
| *Defendant.* | * | |

## SUPPLEMENT TO DEFENDANT'S MOTION TO VACATE ORDERS TOLLING TIME UNDER THE SPEEDY TRIAL ACT AND TO DISMISS THE COMPLAINT WITH PREJUDICE

Joy Saif Choudhury, by and through undersigned counsel, files this supplement to his Motion to Vacate Orders Tolling Time under the Speedy Trial Act and to Dismiss the Complaint with Prejudice to request that this Honorable Court dismiss the indictment with prejudice  and incorporate the reasons set forth in his prior pleadings.

## BACKGROUND

1.      On March 11, 2021, Mr. Choudhury was charged by criminal complaint with one (1) count of Receipt of a Gratuity by a Public Official, in violation of 18 U.S.C. § 201(c)(1)(B). *See* ECF No. 1.

2.      On March 12, 2021, Mr. Choudhury was arrested pursuant to an arrest warrant and brought before this Court for an initial appearance. *See* ECF No. 8; ECF No. 10.

3.      On March 30, 2021, the Court granted the first consent motion *nunc pro tunc*, intending to toll the time from March 12, 2021 to June 1, 2021 (totaling eighty-one (81) days) and postponing the preliminary hearing. *See* ECF No. 14.

4.      On June 2, 2021, the Court granted the second consent motion, intending to toll the time from June 2, 2021 to August 2, 2021 (totaling sixty-one (61) days) and postponing the preliminary hearing. *See* ECF No. 18.

5.      October 17, 2022, the Court granted the third consent motion *nunc pro tunc*, intending to toll the time from August 2, 2021 to December 30, 2022 (totaling 515 days) and postponing the preliminary hearing. *See* ECF No. 20.

6.      On December 3, 2022, Mr. Choudhury's counsel filed a Motion to Vacate Orders Tolling Speedy Trial and to Dismiss the Complaint with Prejudice. *See* ECF No. 22.

7.      On January 25, 2023, Mr. Choudhury was indicted on one (1) count of Interference with Commerce by Extortion, in violation of 18 U.S.C. § 1951. *See* ECF No. 31.

## DISCUSSION

### I.      *NUNC PRO TUNC* ENDS OF JUSTICE CONTINUANCES[1]

It is well-settled that ends of justice continuances cannot be entered *nunc pro tunc*, or after the period in question begins to run.[2] *See United States v. Keith*, 42 F.3d 234, 237 (4th Cir. 1994) (citation omitted) ("We have made clear that the district court may not grant an ends of justice continuance *nunc pro tunc*."); *United States v. Suarez-Perez*, 484 F.3d 537, 542 (8th Cir. 2007) (citations omitted) ("The Speedy Trial Act does not provide for retroactive continuances."); *United*

---

[1] Fourth Circuit precedent provides that a defendant cannot waive his right to a speedy trial under the STA. *See United States v. Hinch*, 308 F. Supp. 2d 599, 602 (D. Md. 2004) (citing *United States v. Keith*, 42 F.3d 234, 238 (4th Cir. 1994)). Thus, a court order based on an ends of justice finding and stating the reasons for such finding is required to toll time under the STA. *See Zedner v. United States*, 547 U.S. 489, 500-02 (2006).

[2] The Fourth Circuit has expanded the holding in *United States v. Carey*, 746 F.2d 228, 230 (4th Cir. 1984), adopting an approach prohibiting *nunc pro tunc* ends of justice continuances outright. *See Keith*, 42 F.3d at 237 (citation omitted). However, the Fourth Circuit allows a court that has granted a continuance *before the period in question begins to run* to enter its actual ends of justice finding "sometimes as late as the filing of the defendant's motion to dismiss on STA grounds" so long as it is "clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance." *Keith*, 42 F.3d at 237 (citation omitted) (emphasis added). Indeed, the "function of a *nunc pro tunc* order is to correct clerical or ministerial errors, including typographical errors, or to reduce an oral or written opinion to judgment; the function is not to make substantive changes affecting a party's rights." *United States v. Suarez-Perez*, 484 F.3d 537, 541 (8th Cir. 2007) (citation omitted); *see also Roman Catholic Archdiocese of San Juan v. Feliciano*, 589 U.S. ___ (2020) (citation omitted) ("[N]unc pro tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact. . . . Put plainly, the court "cannot make the record what it is not."). The Court's continuances were neither timely, *see Keith*, 42 F.3d at 237, nor based on factual or legal reality (e.g., there was no plea offer, the defendant did not consent, the defendant cannot prospectively waive his STA rights), *see United States v. Turner*, 602 F.3d 778, 783 (6th Cir. 2010) (dismissing convictions on speedy trial grounds because court improperly relied on defendant's prospective waiver).

*States v. Brenna*, 878 F.2d 117, 122 (3d Cir. 1989) ("The order continuing the case must be entered *before* the days to be excluded."); *United States v. Janik*, 723 F.2d 537, 545 (7th Cir. 1983) (holding that a "continuance itself must be granted before the period sought to be excluded begins to run. Since the Act does not provide for retroactive continuances[,] a judge could not grant an 'ends of justice' continuance *nunc pro tunc*"); *United States v. Sanchez-Martinez*, 747 F. App'x. 506, 509 (9th Cir. 2018); *United States v. Rodriguez*, 824 F. Supp. 657, 661 (W.D. Tex. 1993) ("Here the Government seeks both a retroactive 'ends of justice' finding and the granting of a continuance which was never originally requested. The Court would in effect become a participant in a fiction designed exclusively for the purpose of circumventing the provisions of § 3161(b). This Court should decline the invitation."). Accordingly, the Court's first and third orders must be vacated and the complaint and the indictment should be dismissed with prejudice.

## II. SPEEDY TRIAL RIGHTS UNDER THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT

Because the complaint should be dismissed with prejudice on speedy trial grounds, the indictment should also be dismissed with prejudice, as the charge set forth therein simply gilds the charge in the complaint and the different accusatorial dates are not reasonably explicable.[3]

---

[3] Alternatively, Mr. Choudhury argues that the language of the STA provides that the thirty (30) day period starting at arrest on the complaint is the period warranting dismissal with prejudice of the indictment, as, for example, the Hobbs Act extortion charge amounts to "such charge." 18 U.S.C. § 3162(a)(1). In other words, the plain meaning of the requirement of Sections 3161(b) and Section 3162 is that "any indictment" that is "in connection with" the defendant's arrest must be filed within thirty (30) days of that arrest, failing which the indictment must be dismissed. If Congress had wanted only to ensure that some indictments would be returned within the thirty (30) day deadline it would have begun Section 3161(b) with the word "an" rather than the word "any." The STA would be inconsistent with traditional speedy trial guarantees, which focus on pending criminal proceedings, if Section 3161(d)(1) was not understood to mean that the subsequent charging document would be subject to the thirty (30) day period marked by the initial arrest.
Additionally, in the alternative, Mr. Choudhury argues that the Sixth Amendment right to speedy trial is not offense specific. *See United States v. Williams*, 314 F.3d 552, 558 (11th Cir. 2022) (per curium); *United States v. Young*, No. 3:98-00038, 2005 WL 3417305, at *3 (M.D. Tenn. Dec. 13, 2005), *aff'd*, 657 F.3d 408 (6th Cir. 2011) (citing *United States v. McDougle*, 82 F.App'x. 153, 159-60 (6th Cir. 2003)).

A charge is "gilded," or "interrelated," and therefore subject to the original Speedy Trial Act and Sixth Amendment speedy trial limitations imposed on the initial charge where it is "but a part of or [really] only gilds the initial charge [underlying the defendant's initial arrest]" by annotating in more detail the initial charge and "the different accusatorial dates between [the initial and subsequent charges] are not reasonably explicable."[4] *United States v. Nixon*, 634 F.2d 306, 309 (5th Cir.), *cert. denied*, 454 U.S. 828 (1981) (Sixth Amendment); *see United States v. Handa*, 892 F.3d 95, 106 (1st Cir. 2018) (holding that the Sixth Amendment speedy trial clock does not reset where "(1) the additional charge and the charge for which the defendant was previously accused are based on the same act or transaction, or are connected with or constitute parts of the common scheme or plan previously charged, and (2) the government could have, with diligence, brought the additional charge at the time of the prior accusation"); *United States v. Graham*, No. 1-21-CR-195-LJV-MJR, at *10 (W.D.N.Y. July 21, 2022) (citing *United States v. Peppin*, 365 F. Supp. 2d 261, 270 (N.D.N.Y. 2005) ("The definition of gilding has room in it for more than just cases that simply reword the original charges, but also those that demonstrate bad faith effort to avoid the Speedy Trial Act.")). *But see United States v. Widi*, 697 F. Supp. 2d 140, 143 (D. Me. 2010) (explaining that the STA does not bar subsequent charging instruments that bring charges "completely separate" from the acts for which the defendant was originally arrested). In this case, "the initial arrest would start the critical period for trial." *E.g.*, *Nixon*, 634 F.2d at 309; *see* 18 U.S.C. § 3161(b); *Dillingham v. United States*, 423 U.S. 64, 65 (1975) (holding that an arrest "to answer a criminal charge" triggers the Sixth Amendment's speedy trial protections). Because the

---

[4] Circuits are split on the proper test for determining whether a charge is gilded. *See, e.g.*, *United States v. Handa*, 892 F.3d 95, 106 (1st Cir. 2018) (holding that the Sixth Amendment speedy trial clock does not reset where "(1) the additional charge and the charge for which the defendant was previously accused are based on the same act or transaction, or are connected with or constitute parts of the common scheme or plan previously charged, and (2) the government could have, with diligence, brought the additional charge at the time of the prior accusation"); *United States v. Black*, 918 F.3d 243, 259 (2d Cir. 2019) (citing *Handa* and rejecting Sixth Amendment speedy trial analysis that only considers whether new charges were different for double jeopardy purposes from prior charges).

untolled time between arrest and indictment was over 675 days, and this delay was not reasonably explicable, the complaint and the indictment must be dismissed with prejudice.[5]

### A. Regardless of what test the Court applies, the charge in the indictment is but a part of or really only gilds the charge in the complaint.[6]

Under the test announced in *Blockburger v. United States*, 284 U.S. 299 (1932), charges are the same if each respective charge does not require proof of at least one other fact, or element, that the other does not.[7] *See United States v. Dixon*, 509 U.S. 688, 696 (1993); *see also Illinois v. Vitale*, 447 U.S. 410, 416 (1980). The *Blockburger* test can be met even with "substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n. 17 (1975). Here, both the elements and the proof offered to establish the offenses are the same.

To the latter point, all of the facts set forth in the indictment come from the complaint's accompanying affidavit, and after the indictment was returned, the government provided new counsel the same discovery that prior counsel received when only the complaint had been filed, with no mention of any forthcoming or otherwise anticipated additional discovery. Aside from a small trim in the timeline from complaint to indictment,[8] the conduct at issue and the proof thereof

---

[5] As an initial matter, the Fourth Circuit's holding in *Carey* pertaining to the Speedy Trial Act has no meaningful application in this case. Since *Carey* was decided, there have been many developments in speedy trial jurisprudence. For instance, *Carey* does not even contemplate the gilding doctrine which has developed significantly even in recent years. While the Fourth Circuit has not concluded that a gilding exception exists, courts have embraced the gilding exception. *Casey* fails to adequately address that the determination of whether a speedy trial period is reset is extremely fact-intensive, under the gilding doctrine or otherwise. *Casey* is also factually distinct from the case at bar; in *Casey*, the delay at issue was only nine (9) days between indictment and arraignment, a delay which the court deemed reasonable. Additionally, *Casey* relies on the severance rules related to the joinder of defendants to inform its position on the joinder of offenses; this analog is faulty for various. First, joinder of defendants has a special carve out in the Speedy Trial Act for automatic tolling (joinder of offenses does not). *See* 18 U.S.C. § 3161(h)(6). Second, joinder of defendants, which is grounded in judicial economy, does not have the same double jeopardy consequences or concerns that arise with joinder of offenses.

[6] Even if the Court deems that it must rely on face of the complaint and indictment in this case to determine whether the charge is gilded, both charging documents clearly cover the same conduct, or offense.

[7] As a result of *Blockburger*, greater-and-lesser-included offenses are treated as the same offense. *See, e.g.*, *Rutledge v. United States*, 517 U.S. 292, 307 (1996).

[8] The indictment covers conduct from June 2019 to May 2020, while the complaint covers conduct from November 2018 to May 2020. The government changed the dates just enough in hopes that the Court might find that the indicted offense is not simply gilding the initial charge. But, in reality, one charge is simple substituting for the other.

is substantially overlapping, if not exactly the same. *See also* "Hobbs Act Under Color of Official Right," JUSTICE MANUAL (citations omitted), https://www.justice.gov/archives/jm/criminal-resource-manual-2404-hobbs-act-under-color-official-right [hereinafter "Hobbs Act Under Color of Official Right"] ("The [H]obbs Act in corruption scenarios is consistent with the parameters of the facts needed to prove the federal crime[] of gratuities under 18 U.S.C. § 201.").

| 18 U.S.C. § 201(c)(1)(B) | 18 U.S.C. § 1951 (Fear) | 18 U.S.C. § 1951 (Color of Official Right) |
|---|---|---|
| Defendant was a public official | | Defendant was a public official |
| Defendant directly or indirectly demanded, sought, received, accepted, or agreed to receive or accept anything of value to which Defendant was not lawfully entitled | Defendant induced (through the use of actual or threatened force, violence, or fear) the victim to part with property to which Defendant was not lawfully entitled | Defendant obtained a thing of value to which Defendant was not lawfully entitled |
| Defendant knew that the thing of value was given in return for official action | Defendant acted knowingly and willfully | Defendant knew that the thing of value was given in return for official action |
| The thing of value was for or because of any official act performed or to be performed by Defendant | The extortion obstructed, delayed, or affected commerce or the movement of any article or commodity in commerce | The thing of value was for or because of any official act performed or to be performed by Defendant |

As aforementioned, the elements are the same as well.[9] The government does not explicitly proceed under the color of right theory in an attempt to shield how virtually indistinguishable the charges at issue actually are.[10] Instead, the indictment charges "extortion . . . as [this term is] defined in 18 U.S.C. § 1951, that is, the defendant obtained approximately $16,650 in United States currency, the property of Victim 1, with Victim 1's consent induced by the wrongful use of fear, including fear of economic loss." ECF No. 31. Despite what the statutory elements provide on

---

[9] The elements in the above table are pulled from Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases*, District of South Carolina §§ 201 and 1951 (2020 Online Edition).

[10] *See, e.g.*, *McDonnell v. United States*, 579 U.S. 550, 562-63 (2016) (discussing that Section 201's obtaining a "thing of value . . . knowing that the thing of value was given in return for official action" was an element of Section 1951 extortion; using Section 201's definition of "official act" for purposes of Section 1951; concluding that, for purposes of Section 1951, the government was "required to prove that Governor McDonnell committed or agreed to commit an 'official act' in exchange for the loans and gifts from Williams"); *see id.* at 563 (citing *Evans v. United States*, 504 U.S. 255, 268 (1992) ("[T]he offense [of Section 1951] is completed . . . when the public official receives a payment in return for his agreement to perform specific official acts. . .")).

their faces, more is written into the application of the statutes via common law, making these statutes, for all purposes here, indistinguishable. *See, e.g.*, "Hobbs Act Under Color of Official Right" ("At the very least, the courts will probably not extend the 'color of official right' clause of the Hobbs Act beyond the parameters of crimes of bribery and gratuities in relation to federal officials that are described in 18 U.S.C. § 201.").

The theory under which the government proceeds for purposes of Section 1951 is ultimately inconsequential because, no matter how the government structures its Section 1951 case, for the charges set forth in the complaint and indictment, the elements to be proven and the facts used to prove such elements are the same for purposes of the gilding doctrine, particularly given the broad applicability of Section 1951. To be sure, the Fourth Circuit has held that payment of an illegal gratuity is a lesser included offense of bribery, *United States v. Muldoon*, 931 F.2d 282, 287 (4th Cir. 1991), and the U.S. Supreme Court construed Hobbs Act extortion to include "taking a bribe," *Evans v. United States*, 504 U.S. 255, 260, 269 (1992); *see id.* at 284 (O'Connor, J., concurring) ("By stretching the bounds of extortion to make it encompass bribery, the Court today blurs the traditional distinction between the crimes.").

Under the "same evidence" test, charges are the same if the evidence required to support conviction in one of the prosecutions would have been sufficient to support a finding of guilt in the other prosecution. *See United States v. Castro*, 629 F.2d 456, 461 (1980). Notably, charges may be the same under the "same evidence" test, even if violations of the same statutes at issue would not inevitably be multiplicitous. *See United States v. Gregory*, 611 F.Supp. 1033, 1039 (S.D.N.Y. 1985) (highlighting that the relevant question is, whether, in this instance, where the very same alleged false testimony is relied upon to sustain the government's proof of the separate charges of false swearing and obstruction of justice, they are multiplicitous, particularly since

intent is an essential element of each offense). The evidence that the government would use to prove a violation of either charge at issue is the same. *See also* "Hobbs Act Under Color of Official Right" (citations omitted). Indeed, the government provided the exact same discovery to new counsel as prior counsel.

Here, the Hobbs Act extortion charge is not "completely separate," *Widi*, 697 F. Supp. 2d at 143, nor does it fail to meet any of the possible tests under the gilding doctrine. The indictment is based on the same information covered by the complaint and accompanying affidavit, no new discovery has been provided in relation to the Section 1951 charge, and the indictment fails to set forth any meaningfully different elements. If the government cannot be penalized for charging someone by criminal complaint, arresting them on the complaint, failing to timely indict, and avoiding dismissal of an indictment simply because it reframes the same conduct under a charge that, in substance, is not meaningfully distinct, then the speedy trial rights codified by Congress and written in our nation's guiding scripture mean nothing and protect no one.

### B.  The difference in accusatorial dates is not reasonably explicable.

The difference in accusatorial dates is not reasonably explicable. In other words, the government "could have, with diligence, brought the [subsequent] charge at the time of the prior accusation." *Handa*, 892 F.3d at 106. The complaint was filed on March 11, 2021. The indictment was returned January 25, 2023. It took the government 685 days to indict a charge that is based on the same conduct and that was likely contemplated as a charging option before the prosecution landed on Section 201. The produced discovery is exactly the same for both charges. The fact that the indictment did not include the statute set forth in the complaint shows that the indicted offense is not a case brought on any new information or its own individual merit. In sum, the government's approach to the case and the nature of the subsequent charge "compel[s] an inference that the

government gilded the indictment, at least in part, to avoid [speedy trial limitations]." *United States v. Peppin*, 365 F. Supp. 2d 261, 270 (N.D.N.Y. 2005) (dismissing new charges with additional elements with prejudice where the charges were factually related to the original charge, the government knew when it framed indictment that original charge violated the STA, and there was no new information or justification for delay).

### III.    OTHER GROUNDS FOR DISMISSAL WITH PREJUDICE

Even if the Court believes dismissal with prejudice is not appropriate on speedy trial grounds, prosecutors are not free to delay indefinitely bringing charges against an individual which are not brought in the initial complaint. Indeed, the Due Process Clause of the Fifth Amendment, the Sixth Amendment's right to effective counsel, Federal Rule of Criminal Procedure 48, and the power of the Court to dismiss a case in its entirety provide appropriate legal grounds for the Court to dismiss the indictment with prejudice here.

Moreover, issues with the indictment's language also support dismissal with prejudice. For instance, if the government is not proceeding on the color of right theory, then the indictment must be dismissed for failure to state an offense. Specifically, in *United States v. Buffey*, 899 F.2d 1402, 1406 (4th Cir. 1990), the Fourth Circuit held that "[e]xtorting money to be devoted to personal use from an individual does not affect interstate commerce" for purposes of Section 1951.[11] Because Mr. Choudhury is alleged to have extorted money to be devoted to personal use from Alleged Victim 1, interstate commerce was not affected.

Additionally, the indictment should be dismissed for failure to state an offense even if the government proceeds under the color of right theory, as the indictment omits essential elements of

---

[11] Mr. Choudhury further moves to dismiss the indictment on the grounds that the Court lacks jurisdiction, given the Fourth Circuit's holding in *Buffey*, 899 F.2d at 1407 ("The question of whether a defendant's acts satisfy the jurisdictional predicate of the Hobbs Act is one of law.")

the offense. *See* ECF No. 31. Relatedly, if the Court declines to acknowledge the holding in *Buffey*, the indictment, as drafted, allows for the government to proceed under various theories—which may create jury unanimity problems—and, if the government is meant to allege conduct not synonymous with the conduct alleged in the complaint, a vagueness issue arises, as Mr. Choudhury and defense counsel are left to ask, "Then what conduct is being charged?"

## **CONCLUSION**

For the reasons set forth herein and in his prior pleadings, Mr. Choudhury requests that this Court dismiss with prejudice the indictment and the complaint in his case.

Respectfully submitted,

_____/s/_____
David Benowitz
Bar No. 17672
*Counsel for Joy S. Choudhury*
Price Benowitz LLP
409 7th Street NW, Suite 200
Washington, DC 20004
(202) 271-5249
David@PriceBenowitz.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 24, 2023, a copy of the above motion has been served via CM/ECF on the parties in this matter.

_____/s/_____
David Benowitz